UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUUD LIGHTING, INC.,

          Plaintiff,

                                Case No. 2:10-cv-00281-RTR

v.

OSRAM SYLVANIA, INC. and
LIGHTING SCIENCE GROUP
CORPORATION,

          Defendants.

---

## DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

---

Defendant, Osram Sylvania, Inc. ("OSI") and intervening defendant Lighting Science Group Corporation ("LSG") (collectively "Defendants"), by and through their attorneys, hereby answer the claims of Plaintiff, Ruud Lighting, Inc. ("RLI"), presented in Plaintiff's Complaint For Patent Infringement ("Complaint"), as follows:

**Parties**

1.    Defendants do not have sufficient information to either admit or deny the allegations contained in paragraph one, concerning the place of incorporation of RLI and the principal place of business of RLI set forth therein, and therefore deny same and leave RLI to its proof thereof.

2.    Defendants deny that OSI is a Massachusetts corporation as alleged in paragraph two and admits that OSI's principal place of business is 100 Endicott Street, Danvers, Massachusetts as recited in paragraph two.

## Jurisdiction and Venue

3. Defendants admit that, as pleaded in paragraph three of the Complaint, the action arises under the patent laws of the United States, including 35 U.S.C. §§271 and 281. Defendants further admit that as pleaded in paragraph three of the Complaint, this Court has jurisdiction under 35 U.S.C. §§1331 and 1338(a).

4. Defendants deny the allegation of the first sentence of paragraph four of the Complaint that venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b). Defendants do not have sufficient information to either admit or deny the allegations contained in the second sentence of paragraph three of the Complaint that venue in this district is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims asserted in the Complaint occurred in this district and leave RLI to its proof thereof. Defendants deny the allegation of the second sentence of paragraph four of the Complaint that venue is proper in this judicial district pursuant to 28 U.S.C. §1391(c). Defendants admit that they do business in this district as recited in paragraph four.

## Background

5. Defendants do not have sufficient information to either admit or deny the allegations contained in paragraph five of the Complaint and therefore deny same and leave RLI to its proof thereof.

6. Defendants deny the allegation of paragraph six of the Complaint that "*Kurt Wilcox*, working for Ruud, *invented a unique* LED lighting apparatus" [emphasis added] and, as to the remaining allegations of paragraph six Defendants do not have sufficient information

to either admit or deny the allegations contained in paragraph six of the Complaint and therefore deny same and leave RLI to its proof thereof.

7. Defendants deny the allegation of paragraph seven of the Complaint that United States Patent No. 7,618,163 (the "'163 patent") is valid and, as to the remaining allegations contained in paragraph six of the Complaint, Defendants do not have sufficient information to either admit or deny the allegations contained in paragraph seven of the Complaint and therefore deny same and leave RLI to its proof thereof.

8. Defendants do not have sufficient information to either admit or deny the allegations contained in paragraph eight of the Complaint and therefore deny same and leave RLI to its proof thereof.

9. Defendants do not have sufficient information to either admit or deny the allegations contained in paragraph nine of the Complaint and therefore deny same and leave RLI to its proof thereof.

10. OSI admits the allegations contained in paragraph ten of the Complaint.

11. Defendants deny that the Post Top Street Light LED Retrofit Kit infringes claims of the '163 Patent. As for the remaining allegations in paragraph eleven, Defendants do not have sufficient information to either admit or deny the allegations and therefore deny same and leave RLI to its proof thereof.

12. Defendants deny the allegation contained in paragraph twelve of the Complaint.

13. Defendants deny the allegation contained in paragraph thirteen of the Complaint.

## Count I – Direct Patent Infringement

14. Defendants repeat the answers set forth in paragraphs one through thirteen above as if they were fully set forth herein.

15. Defendants deny the allegations contained in paragraph fifteen of the Complaint.

16. Defendants deny the allegations contained in paragraph sixteen of the Complaint.

17. Defendants deny the allegations contained in paragraph seventeen of the Complaint.

18. Defendants deny the allegations contained in paragraph eighteen of the Complaint.

## Count II – Inducement of Infringement

19. Defendants repeat the answers set forth in paragraphs one through eighteen above as if they were fully set forth herein.

20. Defendants deny the allegations contained in paragraph twenty of the Complaint.

21. Defendants deny the allegations contained in paragraph twenty-one of the Complaint.

22. Defendants deny the allegations contained in paragraph twenty-two of the Complaint.

## AFFIRMATIVE DEFENSES

As and for their Affirmative Defenses to the Complaint of RLI, Defendants allege as follows:

### Invalidity

1. Each claim of the '163 patent is: invalid under 35 U.S.C. §101 as not invented or discovered; invalid under 35 U.S.C. §102 as lacking novelty; invalid under 35 U.S.C. §103 as obvious; and/or, is invalid for failure to comply with the requirements of 35 U.S.C. §112.

### Non-Infringement

2. Defendants do not now infringe, nor have they ever infringed, any one of the claims of the '163 patent.

### No Inducement To Infringe

3. Defendants have not induced, and are not now inducing one or more others to infringe, any one of the claims of the '163 patent.

### Inequitable Conduct

4. Defendant LSG further alleges as set forth in paragraphs five through fifty-nine.

5. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability of the claimed invention.

6. On information and belief, BetaLED is a division of RLI.

7. On information and belief, since at least as early as January 2009, Kurt Wilcox,

RLI personnel, and/or RLI was aware of Photopia, a software program licensed by LTI Optics LLC and its predecessor Lighting Technologies, Inc.

8. On information and belief, the Photopia software is an optical design tool that assists in the design and evaluation of optical devices such as lenses.

9. On information and belief, Kurt Wilcox, BetaLED, one or more RLI personnel, and/or RLI used the Photopia software to design lenses for LED lighting devices.

10. On information and belief, RLI and/or inventor Kurt Wilcox used the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent.

11. On information and belief, a reasonable Examiner of the United States Patent & Trademark Office (the "USPTO") would consider the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent important in considering the patentability of the claims submitted in the application leading to the '163 patent.

12. On information and belief, the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent is material to the patentability of the claims submitted in the application that led to the '163 patent.

13. On information and belief, the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent is material to the patentability of the claims of the '163 patent.

14. The failure of applicant RLI and/or inventor Kurt Wilcox to disclose the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent to the USPTO during the prosecution of the application that led to the '163 patent is a breach of the applicant's and/or the inventor's duty of candor owed to the USPTO.

15. On information and belief, the failure of applicant RLI and/or inventor Kurt Wilcox to disclose the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent to the USPTO during the prosecution of the application that led to the '163 patent was done intentionally to deceive the Examiner, the USPTO, and/or the public.

16. On information and belief, intent to deceive the Examiner, the USPTO, and/or the public can be inferred from the conduct of applicant RLI and/or inventor Kurt Wilcox, particularly the failure to disclose the use of the Photopia software to design and/or evaluate the structure described and claimed in the '163 patent to the USPTO during the prosecution of the application that led to the '163 patent.

17. An article entitled "LED Source Models" was published in the January/February 2009 edition of *LED Journal* (the "*LED Journal* Article").

18. One of the authors of the *LED Journal* Article was Kurt Wilcox.

19. In the *LED Journal* Article, Mr. Wilcox is noted as the "Engineering Manager of LED & Optical Development of Ruud Lighting."

20. On information and belief, Mr. Wilcox was, at least as early as January 2009, aware of the *LED Journal* Article.

21. The *LED Journal* Article describes, among other things, the use of the Photopia software in connection with designing and/or testing optical system LED lighting.

22. The *LED Journal* Article notes, among other things, that the methodologies described in the article were used in the development of the BetaLED "NanoOptic LED outdoor area lighting optics."

23. On information and belief, the *LED Journal* Article was known to the management of RLI.

24. On information and belief, the *LED Journal* Article was known to the management of RLI directing the filing and/or prosecution of the patent application that led to the '163 patent.

25. On information and belief, the *LED Journal* Article was published before the issuance of the '163 patent.

26. On information and belief, a reasonable Examiner of the United States Patent & Trademark Office (the "USPTO") would consider the *LED Journal* Article important in considering the patentability of the claims submitted in the application leading to the '163 patent.

27. On information and belief, the *LED Journal* Article is material to patentability of the claims submitted in the application that led to the '163 patent.

28. On information and belief, the *LED Journal* Article is material to patentability of the claims of the '163 patent.

29. The failure of applicant RLI and/or inventor Kurt Wilcox to disclose the *LED Journal* Article to the USPTO during the prosecution of the application that led to the

'163 patent is a breach of the applicant's and/or the inventor's duty of candor owed to the USPTO.

30. On information and belief, the failure of applicant RLI and/or inventor Kurt Wilcox to disclose the *LED Journal* Article to the USPTO during the prosecution of the application that led to the '163 patent was done intentionally to deceive the Examiner and/or the USPTO.

31. On information and belief, intent to deceive the Examiner and/or the USPTO can be inferred from the conduct of applicant RLI and/or inventor Kurt Wilcox, particularly the failure to disclose the *LED Journal* Article to the USPTO during the prosecution of the application that led to the '163 patent.

32. On information and belief, Alan Ruud was the President, Chief Executive Officer, and Chairman of RLI at least since 2 April 2007 and through 17 November 2009.

33. On information and belief, from approximately early 2006 until at least late 2007, Mr. Ruud served as a director of Illumination Management Solutions, Inc.

34. On information and belief, during the time Mr. Ruud was a director of Illumination Management Solutions, Inc., Illumination Management Solutions, Inc. specialized in the design and manufacture of high performance light emitting ("LED") devices and apparatus utilizing LED devices.

35. On information and belief, Mr. Ruud was familiar with the business and operations of Illumination Management Solutions, Inc.

36. United States Patent No. 7,674,018 for LED DEVICE FOR WIDE BEAM GENERATION issued on 9 March 2010 based on an application filed 26 February 2007

(and earlier provisional patent applications filed in 2006) that was published on 30 August 2007 (the "'018 patent").

37. The earliest provisional patent application that led to the '018 patent was filed before the filing date of the application that led to the '163 patent.

38. The application that led to the '018 patent was published before the issuance of the '163 patent.

39. On information and belief, prior to 17 November 2009, Mr. Ruud and/or RLI were aware of the work of Illumination Management Solutions, Inc. on lenses for LED lighting of the type disclosed and claimed in the '018 patent.

40. On information and belief, prior to 17 November 2009, Mr. Ruud and/or RLI were aware of one or more of the applications that led to the '018 patent.

41. On information and belief, prior to 17 November 2009, Mr. Ruud and/or RLI were aware of the publication of the application that led to the '018 patent.

42. On information and belief, Mr. Ruud was aware of the application that led to the '163 patent.

43. On information and belief, a reasonable Examiner of the United States Patent & Trademark Office (the "USPTO") would consider the publication of the application of the application that led to the '018 patent to be important in considering the patentability of the claims submitted in the application leading to the '163 patent.

44. On information and belief, the publication of the application that led to the '018 patent and/or the content of that application are material to patentability of the claims submitted in the application that led to the '163 patent.

45. On information and belief, the publication of the application of the application that led to the '018 patent and/or the content of that application are material to patentability of the claims of the '163 patent.

46. The failure of applicant RLI and/or Alan Ruud to disclose the publication of the application of the application that led to the '018 patent to the USPTO during the prosecution of the application that led to the '163 patent is a breach of the applicant's and/or Mr. Ruud's duty of candor owed to the USPTO.

47. On information and belief, the failure of applicant RLI and/or Alan Ruud to disclose the publication of the application of the application that led to the '018 patent to the USPTO during the prosecution of the application that led to the '163 patent was done intentionally to deceive the Examiner and/or the USPTO.

48. On information and belief, intent to deceive the Examiner and/or the USPTO can be inferred from the conduct of applicant RLI and/or Alan Ruud, particularly the failure to disclose the publication of the application of the application that led to the '018 patent to the USPTO during the prosecution of the application that led to the '163 patent.

49. On information and belief, the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software.

50. On information and belief, Kurt Wilcox was aware that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software.

51. On information and belief, a reasonable Examiner of the United States Patent & Trademark Office (the "USPTO") would consider that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software to be important in considering the patentability of the claims submitted in the application leading to the '163 patent.

52. On information and belief, that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software is material to patentability of the claims submitted in the application that led to the '163 patent.

53. On information and belief, that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software is material to patentability of the claims of the '163 patent.

54. The failure of applicant RLI and/or inventor Kurt Wilcox to disclose that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software to the USPTO during the prosecution of the application that led to the '163 patent is a breach of the applicant's and/or Mr. Ruud's duty of candor owed to the USPTO.

55. On information and belief, the failure of applicant RLI and/or inventor Kurt Wilcox to disclose that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software to the USPTO during the prosecution of the application that led to the

'163 patent was done intentionally to deceive the Examiner and/or the USPTO.

56. On information and belief, intent to deceive the Examiner and/or the USPTO can be inferred from the conduct of applicant RLI and/or inventor Kurt Wilcox, particularly the failure to disclose that the structure claimed in at least claims 1 and 23 of the '163 patent was generated entirely or in part by iterative calculations performed by a computer and/or computer software to the USPTO during the prosecution of the application that led to the '163 patent.

57. On information and belief, intent to deceive the Examiner, the USPTO, and/or the public can be inferred from the conduct of applicant RLI, inventor Kurt Wilcox, and Alan Ruud, particularly the repeated and cumulative failures to disclose information material to the patentability of the claims presented in the application that led to the '163 patent to the USPTO during the prosecution of the application that led to the '163 patent.

58. On information and belief, the conduct of applicant RLI, Alan Ruud, and/or Kurt Wilcox in the prosecution of the application that led to the '163 patent constitutes inequitable conduct and renders the '163 patent unenforceable.

## COUNTERCLAIMS

As and for its counterclaims against the Plaintiff, LSG alleges and shows to the Court as follows:

1. On information and belief, Plaintiff and counterclaim defendant RLI is a corporation organized and existing under the laws of the state of Wisconsin with its principal place of business at 9201 Washington Avenue, Racine, Wisconsin.

2. Defendant and counterclaim plaintiff LSG is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1227 South Patrick Drive, Satellite Beach, Florida.

3. This is an action for declaratory judgment of invalidity, unenforceability, and non-infringement of United States Patent No. 7,618,163 (the "'163 patent") under the patent laws of the United States, Title 35 United States Code.

4. Subject matter jurisdiction over these counterclaims is conferred upon this Court pursuant to 28 U.S.C. §1338(a). The relief of declaratory judgment is proper under 28 U.S.C. §2201.

5. A true and actual controversy exists regarding the validity, enforceability, and non-infringement of the claims of the '163 patent asserted by RLI against OSI.

6. As a potential indemnitor of OSI, LSG has a clear, definable interest in having the controversy between RLI and OSI resolved through a Court declaration of the legal rights of RLI and OSI.

7. On April 2, 2010, RLI filed a Complaint in this action against OSI alleging, *inter alia*, that certain products made, used, and/or sold by OSI infringe the '163 patent.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c).

**Count I – Declaratory Judgment: Invalidity Of The '163 Patent**

9. LSG re-alleges the allegations set forth in counterclaim paragraphs one through eight.

10. To resolve the ripe, legal dispute between the parties, LSG requests the Court to enter a judgment declaring as follows: each claim of the '163 patent is invalid under 35

U.S.C. §101 as not invented or discovered; invalid under 35 U.S.C. §102 as lacking novelty; invalid under 35 U.S.C. §103 as obvious; and/or, is invalid for failure to comply with the requirements of 35 U.S.C. §112.

## Count II – Declaratory Judgment: Non-Infringement

11. LSG re-alleges the allegations set forth in counterclaim paragraphs one through eight.

12. To resolve the ripe, legal dispute between the parties, LSG requests the Court to enter a judgment declaring as follows: Defendants do not now infringe, nor have they ever infringed, any one of the claims of the '163 patent.

## Count III – Declaratory Judgment: No Inducement To Infringe

13. LSG re-alleges the allegations set forth in counterclaim paragraphs one through eight.

14. To resolve the ripe, legal dispute between the parties, LSG requests the Court to enter a judgment declaring as follows: Defendants have not induced, and are not now inducing one or more others to infringe, any one of the claims of the '163 patent.

## Count IV – Declaratory Judgment: Inequitable Conduct

15. LSG re-alleges the allegations set forth in counterclaim paragraphs one through eight.

16. LSG re-alleges the allegations set forth in paragraphs four through fifty-eight of Defendants' affirmative defenses.

17. To resolve the ripe, legal dispute between the parties, LSG requests the Court to enter a judgment declaring as follows: The '163 patent is unenforceable as a result of

inequitable conduct before the United States Patent & Trademark Office during the prosecution of the application that led to the '163 patent.

**WHEREFORE**, Osram Sylvania, Inc. and Lighting Science Group Corporation request that this Court:

A. Dismiss Plaintiff's Complaint against OSI and LSG with prejudice;

B. Enter judgment on LSG's counterclaim declaring as follows: (a) OSI and LSG do not infringe, nor have they ever infringed, any one of the claims of United States Patent No. 7,618,163; (b) each claim of United States Patent No. 7,618,163 is invalid; and (c) United States Patent No. 7,618,163 is unenforceable;

C. Find that this is an exceptional case pursuant to 35 U.S.C. §285 and award Defendants their attorney fees, costs, and expenses incurred in defending this action; and

D. Award such other and further relief as may be just and proper under the circumstances.

Dated this 18th day of October, 2010.

>	GASS WEBER MULLINS LLC
>
> /s David J. Turek
> David J. Turek, SBN 1035356
> Brian G. Cahill, SBN 1008879
> Daniel J. Kennedy, SBN 1068680
> Gass Weber Mullins LLC
> 309 N. Water Street, Suite 700
> Milwaukee, Wisconsin 53202
> Ph: 414-223-3300
> Fax: 414-224-6116
> Email: turek@gasswebermullins.com
>
> **Attorneys for Defendants Osram Sylvania, Inc. and Lighting Science Group Corporation**